## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                  **FINDINGS OF FACTS,**
                  **CONCLUSIONS OF LAW & ORDER**
                  Misc. File No. 05-41 (MJD)

(1) CHRISTOPHER WILLIAM SMITH,
a/k/a BRUCE JOHNSON, CHRIS
JOHNSON and ROBERT JOHNSON; and
(2) BRUCE LIEBERMAN;

        Defendants.

_____

Gregory G. Brooker, Nicole A. Engisch, and Elizabeth Peterson, Assistant United States Attorneys, Counsel for the Government.

Joseph S. Friedberg, Joseph S. Friedberg, Chartered, Counsel for Defendant Christopher William Smith.

Marvin Zevin, Yannelli & Zevin, Counsel for Defendant Bruce Lieberman.

_____

## I.    INTRODUCTION

This matter came before the Court following trial by the Court on July 6 and 7, 2005.  Defendant Christopher William Smith and Defendant Bruce Lieberman were accused of criminal contempt.  Because the maximum sentence in this matter is six months or less, this matter was tried without a jury.  Based upon the presentations of counsel and the evidence adduced during the trial, the

1

Court makes the following findings of fact and conclusions of law.  To the extent that findings of fact may be considered conclusions of law, they will be deemed conclusions of law.  Similarly, to the extent that matters expressed as conclusions of law may be considered findings of act, they will be deemed findings of fact.

## II.   FINDINGS OF FACT

### A.   Procedural History

On May 9, 2005, this Court issued an <u>ex parte</u> Temporary Restraining Order against Defendant Smith, his associated businesses, including his Minnesota-based online pharmacy business, and a number of other defendants.  (May 9, 2005, Temporary Restraining Order, <u>United States v. Smith</u>, Civil File No. 5-895 [Docket No. 5].)  The Temporary Restraining Order was based on the Fraud Injunction Statute, which authorizes a civil injunction when the Government shows probable cause that a person has or will soon violate the mail or wire fraud statutes.  18 U.S.C. § 1345.  The Temporary Restraining Order froze Defendants' assets and enjoined them from providing prescription drugs to the public in violation of the mail and wire fraud statutes.

On May 20, 2005, the Court held a hearing on the Government's motion for a preliminary injunction and to appoint a receiver for Smith's businesses.  On that date, the Court issued a Preliminary Injunction with language stipulated to by the parties in the matter.  (May 20, 2005, Preliminary Injunction, <u>United States v.</u>

Smith, Civil File No. 5-895 [Docket No. 27].)  The Preliminary Injunction

continued the freeze of the defendants' assets, appointed a receiver, and enjoined

certain activities.  The Preliminary Injunction was based on the Court's finding of

probable cause that the defendants in that case had committed and continued to

commit federal mail and wire fraud offenses within the meaning of 18 U.S.C.

§§ 1341 & 1343.

On June 24, 2005, the Government moved for an Order to Show Cause why

Smith, his accountant and associate, Lieberman, and another business associate,

Creaghan Harry, should not be held in criminal contempt of the Preliminary

Injunction for accessing frozen assets and for operating an illegal internet

pharmacy business overseas.  Based on its finding of probable cause that

Defendants had violated the criminal contempt statute, 18 U.S.C. § 401(3), the

Court issued the Order to Show Cause the same day.  (June 24, 2005, Order to

Show Cause, United States v. Smith, et al., Misc. File No. 5-41 (MJD) [Docket No.

1].)  Smith, Lieberman, and Harry were ordered to appear before the Court on

July 6, 2005.  Based on probable cause to believe that Smith had fled the

jurisdiction, the Court also issued an arrest warrant for him.

Smith was arrested on June 30, 2005, upon arrival in Minnesota from the

Dominican Republic.  Smith and Lieberman appeared before the Court on July 6

on the Order to Show Cause.  Harry failed to appear.  On July 13, pursuant to the

Government's motion, the contempt proceedings against Harry were dismissed.

The criminal contempt trial proceeded as a bench trial before the Court on July 6 and 7. The parties submitted written closing arguments. The return date was continued until the completion of the criminal case against Smith and Lieberman, United States v. Smith, Criminal File No. 05-282 (MJD/JJG). On November 22, 2006, a jury found Lieberman not guilty of all charges against him and found Smith guilty of all charges against him. The Government has requested that the stay of this criminal contempt case be lifted. Therefore, the Court now issues these Findings of Fact and Conclusions of Law.

**B.      Findings of Fact Regarding Contempt Allegations**

**1.      Existence of a Lawful and Specific Order**

First, the Court finds that the Preliminary Injunction was a lawful order of reasonable specificity. The Preliminary Injunction was legally based on 18 U.S.C. § 1345 and on the Court's finding of probable cause that Smith and others had committed and continued to commit federal mail and wire fraud. The portions of the Preliminary Injunction relevant to the contempt proceedings were also reasonably specific. The Court specifically described the persons enjoined: Smith and the other defendants, and their agents, officers, employees, and persons in active concert with the defendants. It also specifically described the prohibited conduct, including continuing to operate or control websites purporting to

4

provide prescription drugs in violation of the mail and wire fraud statutes and

perpetrating a fraudulent scheme to operate a business purporting to provide

prescription drugs in violation of the mail and wire fraud statutes, and specifically

froze the assets of Smith and other defendants up to eighteen million dollars in

enumerated types of accounts.

### 2.   Notice

"Actual notice" does not require formal service of the preliminary

injunction.  Federal Rule of Civil Procedure 65(d) itself states that injunctions are

binding on "persons in active concert or participation with [parties to the action]

who receive actual notice of the order **by personal service or otherwise**."

(emphasis added)  This language "makes it clear that the amenities of original

process need not be followed."  Wright & Miller, Federal Practice & Procedure

§ 2956 (2007).  The Eighth Circuit has held that a person had "actual notice"

when an injunction was mailed to him and he was informed of the order by

telephone.  Matter of Carter, 691 F.2d 390, 391 (8th Cir. 1982).  See also Select

Creations, Inc. v. Paliafito Am., Inc., 852 F. Supp. 740, 779 (E.D. Wis. 1994) ("A

non-party need not be formally served with an injunction to trigger aider and

abettor liability.  All that is required is that the aider and abettor be given fair

notice that acting in concert with the named defendants would subject them to

contempt proceedings.") (citation omitted).

Additionally, a non-party can be found in criminal contempt of an order

that does not name him:

> It is well-settled that a court's contempt power extends to non-parties
> who have notice of the court's order and the responsibility to comply
> with it.
> * * *
> [A] nonparty may be held in contempt where the nonparty aids or
> abets a named party in a concerted violation of a court order. . . .
> [T]he essence of this rule is that defendants may not nullify a decree
> by carrying out prohibited acts through aiders and abetters, although
> they were not parties to the original proceeding.

Chicago Truck Drivers v. Bhd. Labor Leasing, 207 F.3d 500, 507 (8th Cir. 2000)

(citations omitted).

Defendant Smith had notice of the Court's May 20, 2005, Preliminary

Injunction.  Smith was present, with counsel, at the May 20 Preliminary

Injunction hearing.  He received actual notice of the Preliminary Injunction issued

that same day.

Defendant Bruce Lieberman received actual notice of the Preliminary

Injunction on, at the latest, June 2, 2005, when Debra Madaras faxed him copies

of the Temporary Restraining Order, the Amended Complaint, and the

Preliminary Injunction, at his request.  The fax confirmation sheets confirm that

Lieberman received the faxes.

### 3.  Withdrawal of Money from a Frozen Account

The Preliminary Injunction clearly and specifically enjoined Smith from

6

withdrawing or transferring up to $18,000,000.00 that was on deposit with or

held on behalf of Online Payment Solutions.  As admitted by Smith through his

counsel, the Court finds that, on or about June 6, 2005 - specifically, on June 2,

2005 - Smith intentionally and voluntarily withdrew approximately $2,000.00

from the Online Payment Solutions U.S. Bank account.  At the time that Smith

withdrew the money, he knew that his conduct was a violation of the Preliminary

Injunction.

> **4.    Operation of Online Pharmacy from the Dominican**
> **Republic**
>
> **a.    Smith's Actions**

On approximately May 24, 2005, Smith traveled to the Dominican Republic

with the intention of starting a new online pharmacy business located in the

Dominican Republic.  While in the Dominican Republic, Smith took steps towards

opening an online pharmacy that purported to sell or provide prescription drugs

to the public.  Smith leased office space and he recruited employees.  At his

request, various people brought large sums of cash into the Dominican Republic to

be used to assist in his new business.

Smith oversaw the design and posting of two online pharmacy websites,

allusapainmeds.com and allusamedical.com.  Through these websites, which were

controlled by Smith, Smith intended to offer prescription drugs for sale over the

internet.  Customers would be able to obtain prescriptions through these websites
without a face-to-face consultation with a doctor.  Instead, doctors affiliated with
Smith's Dominican Republic business would issue prescriptions based on an online
consultation.

### b.    Lieberman's Actions

Lieberman acted as Smith's agent when he attempted to open merchant
accounts for Smith's new Dominican Republic business.  He acted in active concert
with Smith in operating a business that purported to sell or provide prescription
drugs to the public.

Lieberman contacted Richard Faust of Central Merchant Services, a
merchant account provider, with the intent to open merchant bank accounts for
Smith's Dominican Republic business.  Lieberman represented that the online
pharmacy was controlled by "Jose," but he knew that Smith controlled the new
online pharmacy.  He told Faust, "I know Chris [Smith] can't be owning it, so
whatever he's doing, however he's making the deals, I don't know, but he seems
to have control over whatever Jose's doing."  Lieberman reported to Smith
regarding his attempts to open the merchant accounts.  On June 21, 2005,
Lieberman stated, "I said to him, I said to Chris, I said if you're going to have it
over there, because I'm still talking to him as if I don't really care, he could be the
English-speaking Jose . . .  I'm telling Chris that if, if what you're telling me is that

8

this is not going to be charged until it's shipped. . ."

## III.   CONCLUSIONS OF LAW

### A.   Standard

"Criminal contempt is a crime in the ordinary sense, and criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 826 (1994) (citations omitted). "The alleged contemnor is at all times clothed with the presumption of innocence and the Government has the continuing burden of proving his guilt." In re Van Meter, 413 F.2d 536, 538 (8th Cir. 1969) (citations omitted).

The essential elements of criminal contempt are a lawful and reasonably specific order of the court, notice of the order, and the willful violation of that order. United States v. KS & W Offshore Eng'g, Inc., 932 F.2d 906, 909 (11th Cir. 1991); United States v. Powers, 629 F.2d 619, 627 (9th Cir. 1980). "An individual may not be held in contempt for violating an order unless the order is 'sufficiently specific to be enforceable.'" In re Medlock, 406 F.3d 1066, 1071 (8th Cir. 2005) (citation omitted).

The Government must prove, beyond a reasonable doubt, that the defendant committed a "knowing and willful violation" of the Court's Preliminary Injunction. Wright v. Nichols, 80 F.3d 1248, 1250 (8th Cir. 1996). "[W]illfulness

means a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of any order, and the necessary intent may be inferred from the evidence." Id. at 1251 (citation omitted).  An action will constitute "an act of criminal contempt, [if] it was a volitional act done by one who knows or should reasonably be aware that [his] conduct is wrongful." Id. (citation omitted ).

Based on the above findings of fact, the Court finds beyond a reasonable doubt that both Smith and Lieberman had notice of a lawful and reasonably specific court order.  The Court now addresses whether Defendants committed a willful violation of that order.

**B.    Mail Fraud and Wire Fraud Allegations**

**1.    Actions Enjoined by the Preliminary Injunction**

The Government alleges that both Defendants violated the following two provisions of the May 20 Preliminary Injunction by marketing prescription drugs over the internet:

> IT IS THEREFORE ORDERED that all Defendants; their agents; their officers; their employees; and all persons in active concert or participating with Defendants in their affairs are hereby temporarily restrained and enjoined:

> A.    from continuing to perpetrate their fraudulent scheme of operating a business that purports to sell or provide prescription drugs to the public in violation of 18 U.S.C. §§ 1341 & 1343; and

B.    from continuing to operate or control any website that purports to sell or provide prescription drugs to the public under any name or title in violation of 18 U.S.C. §§ 1341 & 1343 . . .

(Preliminary Injunction at 3.)

These provisions of the Preliminary Injunction do not prohibit Smith and his associates from operating a business that purports to sell or provide prescription drugs to the public or from continuing to operate or control any website that purports to sell or provide prescription drugs to the public under any name or title.  Rather, the plain language of both subsection A and subsection B requires that the business or website be operated or controlled in violation of the mail fraud or wire fraud statutes.

The Government argues that, because a preliminary injunction is, by definition, preliminary, it would be illogical to require the Government to prove the case on its merits in order to prove a violation of the injunction.  This argument is flawed.  In part, the Preliminary Injunction in this case froze Smith's and his companies' assets.  In order to prove a violation of the freezing provisions of the Preliminary Injunction, the Government need not prove mail or wire fraud, but merely dissipation of the frozen assets.  However, the portions of the Preliminary Injunction related to operation of online pharmacies, in language requested by the Government, explicitly only prohibited Smith and his associates from controlling or operating online pharmacies ***in violation of the mail and***

***wire fraud statutes***.  In arguing that he did not commit wire or mail fraud, Smith

is not collaterally attacking the Preliminary Injunction.  He is, instead, arguing

that he did not violate it.

When an injunction prohibits a defendant from violating a particular

criminal statute, "the elements which would constitute the offense of the criminal

contempt in violation of [the] injunction . . . are coextensive with the elements of

a direct criminal violation of that Act."  United States v. Prugh, 479 F.2d 611, 612-

13 (8th Cir. 1973) (citations omitted).  Thus, in order to show a violation of

subsection A of the Preliminary Injunction, the Government must first prove,

beyond a reasonable doubt, that a defendant operated a business that purports to

sell or provide prescription drugs to the public.  Smith concedes, and the evidence

overwhelmingly demonstrates, that he took steps to do so.  The evidence

establishes that Lieberman acted in concert with Smith to do so.  However, the

Government must also prove that the operation of the business violated the mail

or wire fraud statutes.  It must prove the essential elements of wire fraud in

violation of 18 U.S.C. § 1343: "a scheme to defraud, the use of interstate wires

incident to the scheme, and an intent to cause harm;" United States v. Frank, 354

F.3d 910, 918 (8th Cir. 2004); or the elements of mail fraud in violation of 18

U.S.C. § 1341: the defendant: "1) voluntarily and intentionally devised or

participated in a scheme to defraud; 2) entered into the scheme with intent to

12

defraud; 3) knew that it was reasonably foreseeable that the mails would be used; and 4) used the mails in furtherance of the scheme." <u>United States v. Hively</u>, 437 F.3d 752, 760 (8th Cir. 2006) (citation omitted).

In order to prove a violation of subsection B of the Preliminary Injunction, the Government must first prove, beyond a reasonable doubt, that a defendant operated or controlled a website that purports to sell or provide prescription drugs to the public. Smith concedes, and the evidence overwhelmingly demonstrates, that he took steps to do so, and the evidence establishes that Lieberman acted in concert with Smith to do so. However, as noted above, the Government must also prove that the operation of the website violated the mail or wire fraud statute.

The Government provided evidence that Smith and Lieberman took a number of suspect actions, such as Smith's use of an alias and his transfer of large sums of undeclared cash to the Dominican Republic and Lieberman's use of false names to attempt to register new merchant accounts; however, this evidence does not prove that Smith or Lieberman violated the wire fraud or mail fraud statutes in operating or controlling the Dominican Republic business. The only matter currently before the Court is whether Smith and Lieberman willfully violated this Court's civil Preliminary Injunction.

### 2.    Proof of Mail or Wire Fraud

After review of the evidence in this case, the Court concludes that the

Government has failed to prove that Smith or Lieberman violated the wire fraud or mail fraud statutes, because it has failed to prove beyond a reasonable doubt that Smith's Dominican Republic online pharmacy operation was devised as a scheme to defraud.

The Government asserts that the Dominican Republic operation was designed to defraud customers into believing that they could legally purchase prescription drugs without a valid prescription. Smith asserts that the Online Payment Solutions customers did, in fact, have valid prescriptions for the drugs that they purchased because the doctor-patient relationships that Online Payment Solutions facilitated were sufficient. The validity of the Online Payment Solutions business model is not currently before the Court. The pertinent issue is whether the Government has proven that the Dominican Republic operation constituted a scheme to defraud by soliciting customers to send money for the purchase of prescription drugs without a valid prescription. In connection with the Government's criminal contempt motion, the Government presented no evidence or law to the Court regarding the legality of the doctor-patient relationships that might be created by the Dominican Republic operation. It presented scant evidence on the structure that the operation would use to obtain prescriptions for customers. Besides evidence that Smith might employ six or seven doctors who would not meet face-to-face or over the telephone with patients, the Government

14

provided no information on the prescribing physicians.  There is no evidence

regarding whether the doctors would be licensed in certain jurisdictions.  It also

failed to present evidence regarding the location of the new online pharmacy's

potential customers and the minimum requirements for valid prescriptions in

those jurisdictions.  The Government has not proven beyond a reasonable doubt

that the Dominican Republic operation would utilize insufficient doctor-patient

relationships.

The Court notes that the mere fact that Smith started his new businesses

overseas cannot establish a scheme to defraud.  Although the Government

submitted various evidence that raises suspicions about the legality of Smith's

activities in the Dominican Republic, including evidence that he directed

associates to bring undeclared cash to him to start the business and based his new

operation on the Minnesota operation, one that the Court had already decided

gave rise to a finding of probable cause of violation of the mail and wire fraud

statutes, these suspicions fall short of establishing proof beyond a reasonable

doubt.  The Court concludes that Smith is not guilty of contempt for his part in

the control or operation of the Dominican Republic online pharmacy business and

websites.

Because the underlying Dominican Republic operation was not operated in

violation of the mail or wire fraud statutes, Lieberman's actions to aid Smith in

15

establishing the Dominican Republic operation were not violations of the Court's Preliminary Injunction.  While the Government presented evidence that Lieberman attempted to open merchant accounts for Smith's new business using false names to hide Smith's participation in the business, these actions do not constitute criminal contempt of this Court's Preliminary Injunction when Lieberman's actions were not in furtherance of the control or operation of the new online pharmacy business in violation of the mail or wire fraud statutes.  The fact that Lieberman may have thought that Smith's new business violated the Preliminary Injunction does not establish that the business violated the mail or wire fraud statutes.  These facts are insufficient to establish guilt on the narrow allegations before the Court in this criminal contempt case.  Whatever Lieberman's actions, he would only be guilty of contempt if he took those steps to assist Smith in violating this Court's order.  Because the Government failed to establish that Smith's new business violated the Preliminary Injunction, Lieberman is not guilty of criminal contempt.

The Government has failed to prove that Smith or Lieberman schemed to set up an online business which would defraud customers into believing that they could legally purchase prescription drugs without a valid prescription or that either acted with the intent to defraud those customers, two essential elements of mail and wire fraud.  Thus, neither Smith nor Lieberman is guilty of criminal

16

contempt for their actions in operating or controlling the new online pharmacy business.

### C.     Withdrawal of Frozen Assets

Smith admits that he is guilty of criminal contempt for, on or about June 6, 2005, withdrawing money from the U.S. Bank account of Online Payment Solutions that was frozen and that had been transferred to the control of the Receiver by the Preliminary Injunction, as set forth in the Order to Show Cause. The Preliminary Injunction clearly and specifically prohibited Smith from withdrawing funds from the frozen account. Smith, who was present at the Preliminary Injunction hearing, had notice of the Court's order. He admits that he willfully violated that order. The Court finds that Smith is guilty of criminal contempt for his June 2, 2005, withdrawal of funds from the Online Payment Solutions account. The Court will issue its sanction after Smith has had the opportunity to allocute.

## IV.   ORDER

1.   Pursuant to the findings of fact and conclusions of law of this Court, the Court finds Defendant Bruce Lieberman **NOT GUILTY** of the offense of criminal contempt for marketing prescription drugs on the internet in violation of the Court's Order for Preliminary Injunction, Order Appointing Receiver, and Other Equitable Relief, issued on May 20, 2005, in United States v. Smith, et al., Civil No. 5-895 (MJD/SRN), which prohibited Christopher William Smith and his "agents," "employees," and "all persons in active concert or participating with" Smith from "operating a business that purports to sell or

provide prescription drugs to the public in violation of" the
wire and mail fraud statutes of the United States and which
prohibited them from operating or controlling "any website
that purports to sell or provide prescription drugs to the public
under any name or title in violation of" the mail and wire fraud
statutes of the United States, as set forth in the Order to Show
Cause.

2.      Pursuant to the findings of fact and conclusions of law of this
        Court, the Court finds Defendant Christopher William Smith
        **NOT GUILTY** of the offense of criminal contempt for
        marketing prescription drugs on the internet in violation of the
        Court's Order for Preliminary Injunction, Order Appointing
        Receiver, and Other Equitable Relief, issued on May 20, 2005,
        in <u>United States v. Smith, et al.</u>, Civil No. 5-895 (MJD/SRN),
        which prohibited Christopher William Smith and his "agents,"
        "employees," and "all persons in active concert or participating
        with" Smith from "operating a business that purports to sell or
        provide prescription drugs to the public in violation of" the
        wire and mail fraud statutes of the United States and which
        prohibited them from operating or controlling "any website
        that purports to sell or provide prescription drugs to the public
        under any name or title in violation of" the mail and wire fraud
        statutes of the United States, as set forth in the Order to Show
        Cause.

3.      Pursuant to the findings of fact and conclusions of law of this
        Court, the Court finds Defendant Christopher William Smith
        **GUILTY** of the offense of criminal contempt for withdrawing
        money from the U.S. Bank account that was frozen and that
        had been transferred to the control of the Receiver by
        Preliminary Injunction, Order Appointing Receiver, and Other
        Equitable Relief, issued May 20, 2005, in <u>United States v.
        Smith, et al.</u>, Civil No. 5-895 (MJD/SRN) [Docket No. 27], as
        set forth in the Order to Show Cause.


Dated: April 27, 2007                       s / Michael J. Davis
                                            Judge Michael J. Davis
                                            United States District Court

18